THE STATE OF MISSOURI, Respondent, v. HENRY S. SMITH, Appellant.

1. *Crimes — Receiving Stolen Goods — Criminal Practice.* — In an indictment charging the defendant with receiving stolen goods with a guilty knowledge, it is not necessary that the name of the person who stole the goods should be stated.

2. *Criminal Practice—Receiving Stolen Goods.*—Where a defendant is charged with having received stolen goods jointly with others, he may be convicted if the evidence show that himself separately received the property.

3. *Criminal Practice—Receiving Stolen Goods—Evidence.*—Upon an indictment for receiving stolen goods, knowing them to have been stolen, the State must prove that the property was stolen and that the defendant received the property knowing it to have been stolen; and all the acts which go to prove the fact of the stealing are properly admissible in evidence as part of the *res gestæ*.

State v. Smith.

*Appeal from St. Louis Criminal Court.*

*Krum & Shreve,* for appellant.

While the indictment contains thirteen counts, the 1st, 2d, 3d, 8th, 11th and 12th counts were withdrawn from the jury; the 4th, 5th, 6th and 10th counts contain the same material averments, all charging a joint receiving of the stolen property by three different persons, varying only in the allegation of the ownership of the property without naming the thief; the 7th and 13th counts contain a joint charge of receiving property which had been embezzled, knowing it to have been so embezzled, varying only in the ownership.

The first question which presents itself is: If parties are jointly indicted for receiving stolen or embezzled property, must the *allegata* and *probata* correspond in this as in other cases? The technics of the law require it, as the authorities cited sufficiently show. Does not the philosophy of the law also demand that proof shall be made that whatever possession the parties may be shown to have in the property stolen was a joint possession, not an individual possession? (See authorities cited in Regina v. Wiley, Brit. Cr. Cas. 6–43; 2 Eng. L. & Eq. 532: Rex v. Hartwell, 7 C. & P. 476.)

The thief ought to be named as well as the murdered man. The statute equally requires it. (13 Ired. 338; 4 Yerg. 149; Lewin Cr. 117.)

It is not necessary to aver in an indictment for receiving stolen property that the principal or thief has been convicted, nor to prove it; but it is clearly, on principle and our statute, incumbent on the prosecution to charge and prove the principal. (§ 44, p. 58.)

II. The admission by the court of the declaration of Charles Noyes to the witness Hard, and by him detailed in evidence before the jury, it is submitted was great error—an error in which it is difficult to understand how the court below could have fallen; its admission subversive of the first rules of evidence; it is hearsay testimony and cannot be tortured into anything else. It permits the declarations of a co-defendant,

of a party jointly indicted, jointly impleaded in crime, to become evidence against such co-defendant, such jointly impleaded party, in his absence—some of the declarations being anterior, and some subsequent to the commission of the offence. This would not be tolerated even in a case of conspiracy. In support of this the court is referred to Whart. 295-7; 15 Mo. 168; 29 Mo. 32-50; 34 Mo. 85.

It was incumbent on the State to prove that the money was stolen before defendant could be convicted of its felonious reception. But it must be proved by legal testimony, not by the declarations of other parties; and the statement of Noyes to witness Hard was no more testimony than if some other person had made the statement. No conspiracy between Noyes and defendant is even pretended, much less proven.

The admission of this testimony prejudiced the jury against the defendant. It tended to connect the defendant with the transaction in all its enormity, when he knew nothing of it in fact. The admission of such testimony is most prejudicial; it cannot be erased from the jury even by instruction. Like the blood on Macbeth's hands, it will incarnadine a sea of water. This court has repeatedly warned against the dangerous and pernicious practice of admitting testimony which may prejudice the defendant before the jury. (See authorities cited.)

*Lackland, Cline & Jamison*, for respondent.

By the statutes of the State the receiving of stolen goods, knowing them to have been stolen, is made a substantial felony, and it can be joined in the same indictment with counts for burglary, larceny and embezzlement. (R. C. 1855, § 23, p. 1176, art. 3, §§ 19 & 22, and art. 9, §§ 14, 15, 16 & 18; 16 Mo. 550.)

The true test of practice in the joinder of counts in the same indictment is: if the offences are of a different nature, and the same plea may be pleaded, and the offences are punished by its law in the same manner, they can be joined, although our courts always prevent the too free mode of joining counts for totally distinct classes of cases in the same

indictment, although plead to and punished in the same manner, (as rape and robbery,) for the reason that it might embarrass the defendant in his defence, or cause undue prejudice against him before the jury. These reasons, however, do not apply when the pleader adopts a variety of counts in the same indictment for the purpose of meeting the evidence on the trial, and when all of the counts, though charging different offences, evidently refer to the same transaction. This is a latitude always indulged in by our best and most accurate criminal pleaders, and indeed was absolutely necessary to be adopted for safety, before the enlargement of our statutes of jeofail, which the court will see, from the foregoing references, have become so liberal that the criminal pleader can charge a delinquent with one offence, and at the trial, without amendment, acquit him of that and convict him of another and different offence. The accused ought therefore not complain of the pleader in this cause, for having beforehand given him his indictment, or full, complete and formal statement of the crime of which he was found guilty. (Wheat. Cr. L. 667.)

What criminal pleader could contend for this proposition when all indictments and each count, although framed against many defendants, have ever been regarded as joint and several? and in fact this is the first time in the history of our practice that we have ever heard a contrary doctrine contended for. We are, of course, aware that each count in this indictment embraces a single substantive felony, and that in all cases the evidence introduced under a single count must be confined to a single transaction; and if the transaction involves the guilt of all the defendants under, that count, then all must be convicted; but if it does not, then those only are properly convicted who are guilty; and if there be two or more counts, one of the defendants may be convicted on one count, while the other may be convicted on the other. Here the court must perceive that there can be a joint charge in the different counts of the same indictment against two or more defendants, with a several conviction

against each upon separate, distinct, and substantive felonies, which are properly joined in the same indictment under the rules of law heretofore cited.

If this be true, then the argument of the counsel for the accused is not only circular and therefore vicious, but also suicidal within itself. There is but one receiving in proof and that was committed by the accused, and the verdict is general and announces his guilt. He might as well claim his discharge because the evidence did not show that some one else, who was a total stranger to the record, was not also jointly guilty with him. (Regina v. Davey & Gray, 2 Eng. L. & Eq. 532; 38 Eng. Com. L. 121 & 157; Regina v. Smith, 33 Eng. L. & Eq. 531.)

The next and only remaining point to be noticed in this case : was there any error in the admission of evidence on the trial ? To maintain the charge of receiving against the accused, it was incumbent on the State to prove the original taking as well as the guilty receipt; and hence all matters, manipulations, and plans, connected with the robbery, were competent proof; and for this purpose the actors were competent witnesses against the receivers ; and all that was done and said by them in perfecting and executing this scheme was part of the *res gestæ* and proof, and, although the accused was not present at the commission of the offence, and stands here to-day convicted of a separate and distinct offence made by our law a substantive felony, yet, for all the practical purposes of the trial, the case still stands as it did at common law, where the receiver was regarded as an accessory after the fact. The rules governing the competency and production of the evidence remain the same, except that no conviction or outlawry need be alleged or proven to secure the conviction. The office he undertakes to perform for his co-defendants is to secrete the fruits of their crime.

We do not contend that the body of the original felony could be proven by the confession of the principal actors, thereby dispensing with proof *aliunde*. Nor has this been done in the case at bar. Proof has been made of all that

State v. Smith.

has been done by the different actors, from the original conception of the crime until its final consummation. And the accused now complains of the court below for permitting Hard, the accomplice, to state what he and Charles Noyes said to each other about the robbery whilst engaged in the shifting scenes and transactions which go to make up its history.

It is unnecessary to refer to authorities to support the rulings of his honor, the *nisi prius* judge, on this point, for the reason that, whether they were proper or improper, they are wholly immaterial to the defendant. He was in nowise prejudiced or affected by the proof; it could neither mislead nor prejudice the jury in passing upon the guilt or innocence of the accused. This court has repeatedly decided that a judgment will not be reversed because irrelevant testimony was admitted, unless it is calculated to mislead or prejudice the jury, and the rule in criminal cases is the same in this particular that it is in civil cases. (McDermott v. Barnum, 19 Mo. 204.)

LOVELACE, Judge, delivered the opinion of the court.

Several errors are complained of by the defendant, but they may all be properly discussed under four heads: 1. The indictment charges the defendant with receiving stolen property, knowing it to be stolen, without naming the thief; 2. The indictment charges the defendant, jointly with Charles Noyes and Friend Noyes, with receiving the property, when the evidence tends to prove that the defendant alone received it; 3. It is complained that the court admitted improper evidence on the part of the State, and excluded proper evidence on the part of the accused; and 4. That the court misdirected the jury as to the law in the case.

I. As to the first point, that the indictment fails to state the name of the thief or principal felon, the elementary books seem to settle the question and place it beyond argument. The *gravamen* of the offence is receiving stolen goods, knowing them to be stolen. It is a substantive felony. It

is a crime within itself; and the name of the person who stole the goods is immaterial. (Arch. Crim. Pl. 256; Roscoe, Crim. Ev. 804; Stark. Crim. Pl. 186; Whar. Crim. Law, 679–80.) The adjudged cases are to the same effect. (Rex v. Jervis, 6. Car. & P. 156; Rex v. Wheeler, 7 Car. & P. 170: Swaggerty v. The State, 9 Yerg. 338; State v. Copperburg, 2 Strob. 273.) It is true these decisions are made under statutes, but so far as this question is concerned the statutes under which these decisions are made are exactly similar to our own.

II. It is insisted on by defendant's counsel that inasmuch as the indictment charges the defendant with receiving the stolen goods jointly with Charles Noyes and Friend Noyes, and the evidence showed only a separate act of receiving by the defendant, he ought not to be convicted. That the *probata* and *allegata* ought to correspond, and to support an allegation of joint receiving there must be proof of joint receiving, and proof of a separate receiving will not be sufficient; and in support of this several cases have been cited, the leading one of which is Rex v. Messingham, 2 Brit. Cro. Cas. 257. Two persons, Mary Messingham and John Messingham, were upon a joint indictment charged with receiving 50 pounds weight of pork, of the value of 20s., of the goods and chattels of John Fisher, then lately before feloniously stolen, taken and carried away by some evil disposed person to the jurors unknown, well knowing the goods and chattels aforesaid to have been so as aforesaid feloniously stolen, &c. It was proved by satisfactory evidence that the meat was the property of John Fisher; that it had been stolen from him by some person unknown, and that both the prisoners knew it to have been stolen. The meat was found in the pantry of a cottage belonging to Mary Messingham, in which John Messingham, her son, and his children lived with her. Mary Messingham had the key of the pantry at the time the meat was found. The statements of the prisoners were given in evidence, which showed that a man gave a bag to John and told him to take it home and leave what was in it until he called for

it, and return the bag to him again. John took the bag in-doors and opened it and took out several pieces of hog meat and laid them on the stool in the pantry, and then returned the bag to the man again. When his mother returned home that evening he related the circumstance to her. Mary Mes-singham said in her statement that the meat was her son's meat; that he brought it in-doors on Saturday and she salted it. Both prisoners were convicted. It was objected at the trial that Mary Messingham could not be legally convicted jointly with John Messingham upon this indictment; first, because the offence of John Messingham was complete before Mary Messingham took any part in the transaction; and, sec-ondly, because she did not receive the meat of an unknown thief, as alleged in the indictment, but of her son John. The question for the consideration of the judges was, whether Mary Messingham was properly convicted, and the judges were unanimously of the opinion that on the point charged it was necessary to prove a joint receipt, and as the mother was absent when the son received, it was a separate receipt by him.

It will be observed that no question was made as to the propriety of convicting John Messingham under the indict-ment on proof of the separate receipt by him. And this point is still further explained in Regina v. Davey & Gray, 6 Brit. Cro. Cas. 89. The indictment in this case charged the defendants with jointly receiving twelve turkeys, know-ing them to have been stolen. The evidence showed that the turkeys were stolen by a man named Hadden; and Davey stated that he was called up at two o'clock in the night on which the turkeys were stolen by Hadden, who brought the turkeys to him in a sack; that he took them to Salisbury and sold them for Hadden. But the evidence showed that he sold only two and left the other ten with the other de-fendant, Elizabeth Gray, who resided at Salisbury, and who was proven to have disposed of the turkeys the same day. The jury returned a verdict of guilty against both prison-

ers for receiving. The verdict was objected to, inasmuch as the indictment charged a joint receiving and the evidence showed separate acts of receiving by each defendant, and the jury were sent back and returned a verdict in this form: "We find that William Davey received on the road between Brook and Salisbury, and Elizabeth Gray at Salisbury." The prisoners were not together. The question before the court was, whether upon this verdict the judgment ought to be reversed in favor of both or either of the prisoners. The court were of opinion that the first receiver, Davey, was properly convicted. And as Rex v. Messingham shows that several persons cannot be convicted of distinct felonies which are charged in an indictment as a joint felony, the evidence ought to have been confined to the case of the first receiver, and a verdict of acquittal taken in favor of Gray.

The rule to be deduced from these cases seems to be that when several are charged with jointly receiving stolen goods, to convict all or any two or more of them a joint receipt must be proven.

But in the case of Rex v. Horthall, Neal, Mole, and Horseman, 7 Car. & P. 475, the first count of the indictment charged Horthall and Neal with a burglary in the house of Richard Gould, and stealing 200 pounds of bacon and other articles, and the same count went on to charge Mole with receiving 75 pounds, and Horseman with receiving a like quantity. There was also a count charging Mole and Horseman with the substantive felony of jointly receiving the bacon, and two other counts charging Mole and Horseman separately with a separate substantive felony, in each separately receiving a part of the stolen bacon. The burglary of Horthall and Neal was proven; but the evidence of receiving showed that Mole and Horseman had received portions of the stolen bacon on different occasions and quite unconnectedly with each other. The counsel for Mole and Horseman submitted that the count which charged a joint receiving was not proven, and that as distinct felonies had been committed by

the prisoners, Mole and Horseman, they ought to have been tried separately. The prisoners were all convicted, and the court refused to disturb the verdict.

It seems, then, that from all the authorities on the subject, it may be safely stated that in this case if the money was stolen, and the defendant Smith received it knowing it to have been stolen, he may be convicted although he is charged with jointly receiving it with others when the evidence shows that it was a separate act of receiving on his part.

But it is insisted that Charles Noyes first received it from Hard, the thief, and then delivered to this defendant, and that the receipt by Noyce satisfied the charge in the indictment and the defendant ought to have been acquitted according to the doctrine of Rex v. Messingham. But the facts proven do not warrant this conclusion, nor would they justify an instruction to this effect. The evidence of Hard shows that he and Charles Noyes jointly committed the theft, and not Hard alone. It is said that a party engaged in the transaction is a principal thief, not a receiver, (Roscoe Crim. E. 807,) and Charles Noyes received the money, not as the fruits of Hard's embezzlement, but as the fruits of his own burglary and larceny. He was equally guilty with Hard in the whole transaction; indeed, he seems to have laid the plan by which the burglary was accomplished. He was one of the original offenders, and for all purposes must be regarded as holding the money as the fruits of his own theft. Then, if the principle is correct, (and I think it is settled beyond dispute,) but one receiving was proven by the evidence, and that was the receiving by the defendant Smith from Noyes, and according to the doctrine laid down in the cases cited he might properly be convicted for that receipt.

III. It is complained that the court below improperly admitted the witness Hard to relate conversations between himself and Charles Noyes prior to the theft, in relation to how the express company might be robbed, and in forming their plans to accomplish the felony; and also a conversation which took place between them the morning after the crime had been committed.

To convict the defendant Smith under the indictment, it was necessary for the State to prove two things: first, that the money alleged to have been received by Smith was stolen; and, second, that Smith received it knowing it to have been stolen. (Whart. Crim. L. 676.) The act of stealing the property had to be proven, not by anything the defendant Smith had said or done, for so far as the indictment and evidence shows he had nothing to do with the stealing nor any knowledge of it until after it was accomplished. But this fact had to be proven by what was done and said by other parties with whom Smith had nothing to do at the time. The act of stealing, especially when accomplished by more than one person, has several parts. There must be plans laid and arrangements made, and there must be acts done in accordance with these plans and arrangements, and all these parts taken together constitute one act. Then, in proving an act, may you prove all its parts, or are you confined to the proof of its consummation? It is generally sufficient to prove the final consummation, and the law will then presume all the concomitant parts that go to make up the act. Thus, in murder, if the killing be proved, the law will presume it was done in malice; but this presumption would not cut the prosecution off from proving that it was done in malice. Again, if a person is proved to have taken the property of another from his possession without his (the owner's) knowledge or consent, the law will presume that it was taken feloniously — that the taker took it with the intention of converting it to his own use; but the prosecutor will not be prevented from proving this intention by evidence. And so of any of the other concomitants of crime. It may be unnecessary that the prosecution should prove them, but it could hardly be urged as an objection that he does prove them. So in the case at bar. Charles Noyes and the witness Hard commit a felony in the express office of the United States Express Company. Can it do the defendant any harm to prove when and where and how they agreed upon the plan by which this should be accomplished? Was not the plan and arrangements by which the money was taken as much a part

of the felony as the taking of the money itself? The felony, the stealing of the money mentioned in the indictment, was a substantive fact that the prosecution must prove; and upon what principle is he to be debarred from proving one part of that substantive fact rather than another? But it is urged that the conversations between Hard and Noyce are, so far as this defendant is concerned, irrelevant, and ought not to be admitted. They certainly ought not to be admitted for the purpose of connecting the defendant Smith with the stealing. And if Smith's name had been mentioned, as much at least of the conversation as referred to him ought to have been excluded. But these conversations were competent to prove the stealing—to show how it was planned and how it was accomplished; and in this sense they were not hearsay but a part of the *res gestæ*. If these conversations are to be excluded as hearsay because Smith was not present nor proven to have had any knowledge of them, why may not, on the same principle, the act of stealing be excluded as *res inter alios acta?* Smith was no party to that either, and that would tend just as much to prejudice the minds of the jury against him as the details by which it was accomplished. Both the plan of the theft and its consummation form one transaction, and might be properly admitted. (Roscoe Cr. Ev. 20; 1 Phil. Ev., 191–4; Maryland v. Ridgly, 2 Har. & McH. 120.)

On the cross-examination of Mrs. Van Court, a witness called on the part of the State, the defendant offered to prove that quinine was brought to her house about the time of the robbery of the United States Express Company, to be sent away secretly. The prisoner boarded at her house. This evidence was ruled out. The State had before proven that the defendant said that about the time of the robbery Charles Noyes had come to him and asked him to send some quinine to New York for him, Noyes; that Noyes said he had sent it to Memphis for the purpose of getting it through the Federal lines, and had failed, and the detectives were now on the lookout for the quinine, it being contraband of war, and that he had agreed to send the quinine for Noyes, and when

Noyes brought the bundle to his room and put it in the trunk he supposed it was the quinine. This evidence of Mrs. Van Court was offered to support the prisoner's statement. There was no error in excluding this evidence. The defendant was entitled to every reasonable hypothesis of the innocence consistent with the evidence, and if it was probable that this state of facts could have existed, the jury were bound to acquit under the instructions of the court. The court instructed them that "in order to convict a defendant upon the evidence of circumstances alone, it is necessary that the circumstances proven shall have relation to, and be consistent with, each other; that they all concur to show that he is guilty of the offence charged against him, and that they all be inconsistent with any other rational conclusion. The inference against a defendant to be drawn from the circumstances proven must be so reasonably and morally certain as to exclude every presumption of his innocence. Under the law then, as thus laid down, if the defendant could even suppose a reasonable theory of his innocence, consistent with the facts proven, the jury were bound to acquit. The defendant was not required to prove his innocence; but if he could even suppose a reasonable theory consistent with the facts proven, the jury were bound to accept it and acquit. The court did, however, permit another witness, McCracken, to prove all about the quinine. So the defendant got the benefit, if there was any benefit in it, of all the evidence that was rejected.

IV. The last complaint is that the jury were misdirected as to the law. The instructions will not be set out in full here or very lengthily noticed, for the reason that the principles involved in them have already been discussed in a former part of this opinion. Instructions numbered 1, 2, and 10, in the series of instructions, and refused by the court, are based upon the idea that there must be a joint receiving by the defendant Smith, and Charles Noyes, and Friend Noyes, as charged in the indictment, otherwise the defendant ought to be acquitted. These instructions were properly refused for reasons given in a former part of this opinion.

The third instruction refused is based upon the idea that

the defendant, before he could be convicted, must be proven to have received the goods from Charles D. Hard, who is alleged in some of the counts of the indictment to be the person who embezzled the money. This was a fact that it was neither necessary to allege or prove, and the instruction was properly refused. (Rex v. Jervis, C. Car. & P. 166.)

The fourth instruction laid down no rule of law that would aid the jury in coming to a conclusion upon the facts.

The rule intended to be reached by the fifth, sixth, seventh, eighth, and ninth instructions was properly laid down by the court in the second instruction given on its own motion, and it was unnecessary to repeat it.

The eleventh instruction refused was based upon the idea that the principal felon must be named, and was properly refused for the reasons given in a former part of this opinion.

We find no error in the record, and the judgment is affirmed. The other judges concur.