CHESNUT v. THE PEOPLE.

1. CRIMINAL LAW—LIVE STOCK—FELONY.

Under the statute the stealing of neat cattle or other animals enumerated therein constitutes a felony regardless of the value of the animal stolen.

2. PRACTICE IN CRIMINAL CASES.

It is necessary to allege and prove value in larceny cases only when the value of the property alleged to have been stolen determines the grade of the offense.

3. SAME—CONSOLIDATION—PRESUMPTION ON REVIEW.

When two or more informations charge the same class of offenses as having been committed by the accused at the same time and place, they may be consolidated for trial, and, where it does not appear from the evidence to the contrary, it will be presumed upon review that the order of consolidation was proper.

4. APPELLATE PRACTICE IN CRIMINAL CASES.

It seems that in order. to obtain a review of the ruling of the court below in consolidating criminal cases for trial it should have been objected to at the time it was made.

5. BRANDS—RECORD.

The act of 1885, providing a system of recording brands, does not in any way change the. effect of a record, or the manner of proving the same, of brands recorded prior to that enactment.

6. SAME—RECORD—PROOF.

While the statute (Gen. Stats., 1883, sec. 3174) provides that the certificate of a brand shall be filed for record in the county wherein the person filing the same resides, it does not require that the record shall show such residence, and the fact of residence may be shown *aliunde* the record, if not presumed.

7. SAME—EVIDENCE.

The record of a brand is admissible in evidence when it appears in all respects to conform to the requirements of the statute, except a formal certificate signed by the owner.

8. SAME.

When the record shows that brand was certified to secretary of state under the requirements of the act of 1885, and subsequently

recorded in the counties where used at date subsequent to the alleged larceny, while the last record, alone, would not be sufficient to show ownership, yet when taken in connection with evidence that the present owner was in fact the owner of the brand long before and at the time of the taking, proof of such subsequent rec-. ord is admissible and proper to be considered in determining the question of ownership.

9. BRANDS—SALE OR TRANSFER—EVIDENCE.

Previous to 1889, recorded brands were subject to sale or transfer as other personal property, and such transfer may be shown by parol evidence.

10. JURY, SEPARATION OF.

Something more than a mere separation of the jury must be shown to justify the setting aside of a verdict. It must appear that the party to be affected by the verdict was prejudiced by the conduct or misconduct of the jury.

11. SAME—MISCONDUCT OF BAILIFF.

While the conduct of a bailiff in taking a jury in a criminal case to the post office for the purpose of procuring mail was reprehensible, yet, in the absence of a showing that such misconduct prejudiced the rights of the defendant, it would not require a setting aside of the verdict.

*Error to the District Court of Weld County.*

AT THE November term of the district court of Weld county two separate informations were duly filed against the plaintiff in error, charging him with the larceny of certain neat cattle, as follows (omitting the formal part):

"No. 570.

"THE PEOPLE OF THE STATE OF
          COLORADO                    }  INFORMATION.
               v.
     ROBERT CHESNUT.

   *       *       *       *       *       *       *       *

"That Robert Chesnut, late of the county of Weld and state of Colorado, on or about the first day of September, in the year of our Lord one thousand eight hundred and ninety-four, at and within the county aforesaid, one cow and one steer, being two head of neat cattle of the personal goods and chattels of Charles G. Buckingham then and there

being found, did then and there unlawfully and feloniously steal, drive and lead away; and did then and there unlawfully and feloniously deprive the said owner of the immediate possession thereof, with the intent to steal the same; and did then and there unlawfully and feloniously apply the same to his own use, with an intent to steal the same," etc.

"No. 571.

"THE PEOPLE OF THE STATE OF COLORADO,
v.
ROBERT CHESNUT.

INFORMATION.

\*          \*          \*          \*          \*          \*          \*          \*

"That Robert Chesnut, late of the county of Weld and state of Colorado, on or about the first day of September, in the year of our Lord one thousand eight hundred and ninety-four, at and within the county aforesaid, one cow and three steers, being four head of neat cattle of the personal goods and chattels of John D. Davis then and there being found, did then and there unlawfully and feloniously steal, drive and lead away; and did then and there unlawfully and feloniously deprive the said owner of the immediate possession thereof, with an intent to steal the same; and did then and there unlawfully and feloniously apply the same to his own use, with an intent to steal the same," etc.

On motion of the district attorney the court ordered these informations consolidated for the purpose of trial. Upon the trial of the cause, over objection of plaintiff in error, the following certified copy of stock brand was admitted in evidence:

"CERTIFIED COPY OF STOCK BRAND.

"STATE OF COLORADO, } ss.
"LARIMER COUNTY,

"Office of Clerk and Recorder.

"In accordance with the provisions of an act of the fifth general assembly of the state of Colorado, entitled 'An Act

to Provide a System of Recording Brands in This State,' approved April 7, 1885, I, T. J. Montgomery, county clerk and recorder in and for said county, in the state aforesaid, do hereby certify that on this thirtieth day of July, A. D. 1885, the following appears of record in book B, page 68, of the records of my office, to wit:

| Brand | Ear mark | Owner | Residence |
|---|---|---|---|
| VI | | Geo. S. Richardson. | |

Being the letters V and I to be placed
on the left shoulder of horses and mules
and left side of cattle.

"And that the above is a true copy of said brand. In testimony whereof, I have hereunto set my hand and affixed the seal of said county this thirtieth day of July, A. D. 1885.

(Seal)     " T. J. MONTGOMERY,
     " Clerk and Recorder."

" UNITED STATES OF AMERICA, ⎱ ss.
" STATE OF COLORADO,     ⎰

" State of Colorado,

" Office of the Secretary of State.

"I, Nelson O. McClees, secretary of state of the state of Colorado, do hereby certify that the annexed is a full, true and complete transcript of the certified copy of stock brand of Geo. S. Richardson, which was filed in this office the thirty-first day of July, A. D. 1885, and admitted to record in book B, page 595.

" In testimony whereof I have hereunto set my hand and affixed the great seal of the state of Colorado, at the city of Denver, this nineteenth day of November, A. D. 1894.

(Seal)     ,     " NELSON O. McCLEES,
     " Secretary of State.
     " LYMAN B. HENDERSON."

Indorsed on back: " 47479—Geo. S. Richardson, Larimer county: Certified copy of stock brand filed in the office of the secretary of state, of the state of Colorado, on the thirty-first day of July, 1885, and recorded in state brand book B, page 595.     MELVIN EDWARDS,
     " Secretary of State."

"State of Colorado, } ss.
"County of Larimer,

"I hereby certify that this instrument was filed for record at 2:30 o'clock P. M., November 20, 1894, in my office, and duly recorded in book 30, p. No. 22.

"F. D. Abbott, Recorder,
"J. T. Budrow, Deputy."

"State of Colorado, } ss.
"County of Weld,

"I hereby certify that this instrument was filed for record in my office at 6:30 o'clock P. M., November 20, 1894, and is duly recorded in book 4 of brands, page No. 338.

"T. C. Williams, Recorder,
"By J. B. Phillips."

And also the following instrument:

"Loveland, Colo., Nov. 15, 1887.

"For the sum of ten dollars ($10) I agree to transfer to C. G. Buckingham of Boulder county all of my right and claim to one brand (VI) recorded in my name in Larimer and Weld counties, and Colorado state; also to transfer all cattle owned by me branded with the above brand. Money received. G. S. Richardson."

And in addition, oral evidence of a transfer of said brand to Charles G. Buckingham.

The plaintiff in error was convicted upon both informations, and sentenced to the penitentiary for four years and six months.

To reverse this sentence he brings the case here on error.

Mr. H. E. Churchill and Messrs. Miller & Sayre, for plaintiff in error.

The Attorney General, Mr. F. P. Secor and Mr. G. H. Thorne, for the People.

Mr. Justice Goddard delivered the opinion of the court.

The foregoing statement is sufficient to present the ques-

tions discussed and relied on by the plaintiff in error for a reversal. The first is that the court erred in rendering judgment upon the verdict and in sentencing the plaintiff in error, because the informations do not set out or state any value of the property alleged to have been stolen. The informations are based upon the following statute, found on page 130, Session Laws of 1891, which enacts:

- "SECTION 1. Any person who shall steal, embezzle or unlawfully kill, sell, drive, lead or ride away, or in any manner unlawfully deprive the owner of the immediate possession of any neat cattle, horse, mule, sheep, goat, swine or ass, or any person who shall steal, embezzle or unlawfully kill, sell, drive, lead or ride away, or in any manner unlawfully apply to his own use any neat cattle, horse, mule, goat, sheep, ass or swine, the owner of which is unknown, or any person who shall purchase from any one knowing that he has not the lawful right to sell and dispose of the same, any neat cattle, horse, mule, sheep, swine or ass, shall be deemed guilty of larceny, and on conviction thereof in any court of competent jurisdiction, shall be punished by imprisonment in the penitentiary for a period of not less than one year nor more than ten years, or by a fine of not less than two hundred dollars nor more than five thousand dollars, or by both such fine and imprisonment, at the discretion of the court. All cases which are by this act declared to be larceny, shall be deemed and taken to be, and the courts of this state shall construe the same to be, grand larceny, subjecting the offender or offenders to fine and imprisonment as above specified, notwithstanding that the value of such animal or animals may be less than twenty dollars."

It is insisted by counsel for plaintiff in error that to constitute larceny of any character some value of the thing taken must be stated in the information, and proved on the trial, and that the language, "notwithstanding that the value of such animal or animals may be less than twenty dollars," used in this statute, necessarily implies and requires

that the animals specified must be shown, by averment and proof, to be of some value.

We cannot concur in this view of counsel. Reading this statute in the light of our statute on the subject of larceny in force at the time it was enacted, the reason that the legislature used the language quoted is evident. By that statute, larceny was divided into what was known as grand and petit. In other words, larceny of property under $20.00 was made a misdemeanor, while the stealing of property of a greater value than that sum constituted the crime of grand larceny, and subjected the person convicted to punishment in the penitentiary. By the act under consideration, the stealing of neat cattle and other animals enumerated, whatever their value, constitutes a felony, and subjects the person convicted to punishment in the penitentiary as therein specified, thus defining the substantive offense and providing for its punishment. And to make it clear that the offense thus defined should constitute grand larceny, the legislature expressly enacted that it should be so deemed and construed by the courts, notwithstanding the value of the animals stolen was less than the sum theretofore necessary to constitute that offense; in other words, that the offense should constitute grand larceny, regardless of value. It is necessary to allege and prove value in cases of larceny only when the value of the property alleged to have been stolen determines the grade of the offense and the punishment to be imposed; and where the punishment does not depend upon the value of the article stolen, proof of value is unnecessary.

While it may be true, as contended by counsel for plaintiff in error, that things of no value are not subjects of larceny, still the animals enumerated in the statute are, from their very nature and use, of some value, and this value may be inferred by the jury from their description, even though there be no direct evidence upon that point. *Territory v. Pendry*, 9 Mont. 67; *Houston v. State*, 13 Ark. 66; *Lopez v. State*, 20 Tex. 780; Rapalje on Larceny and Kindred Offenses, secs. 140, 141.

It is further urged as a ground of reversal that the court erred in consolidating the informations against the defendant, and ordering the same tried together. The plaintiff in error interposed no objection to this order of consolidation, and did not in any manner question the correctness of such order in the court below; nor is there anything in the record to show that the court erred in ordering such consolidation. The informations on their face charge the offenses to have been committed on the same day and at the same place. And, while the evidence does not show whether or not the animals were taken at the same time, it does disclose the fact that they were found together on the 15th of October, 1894, in the pasture of plaintiff in error, freshly branded with his brand.

We are unable to say that the offenses charged were not for acts so connected that they were properly consolidated for trial, under section 945 of the General Statutes of 1883.

The further errors assigned upon the admission of a certified copy of the brand record as evidence of the ownership of certain of the animals in Charles G. Buckingham, and upon the giving of that portion of the charge wherein the court below instructed the jury that such brand was lawfully recorded, and *prima facie* evidence of ownership, present a more difficult question, and one that is not entirely free from doubt; but upon careful consideration we feel constrained to uphold the action of the court below in the premises. The statutory provisions prescribing the conditions upon which the brand upon an animal shall be *prima facie* evidence of ownership in the person to whom it belongs, are as follows:

"Any person desiring to use any brand shall make and sign a certificate, setting forth a *fac simile* and description of the brand which he desires to use, and shall file the same for record in the office of the county clerk of the county wherein he resides, which clerk shall record the same in a book kept by him for that purpose, and from and after the filing of such certificate the person filing the same shall

have the exclusive right to use such brand within such county for the purpose aforesaid. And any person or persons so desiring may, in the manner and with like effect, as herein provided, record his brand or mark in any county in the state into which his stock are liable to stray." Sec. 3172, Gen. Stats., 1883.

"In all suits at law or in equity, or in any criminal proceedings, when the title of any stock is involved, the brand on an animal shall be *prima facie* evidence of the ownership of the person whose brand it may be : *Provided*, that such brand has been duly recorded as provided by law. Proof of the right of any person to use such brand shall be made by a copy of the record of the same, certified to by the county clerk of that county or any county in which the same is recorded under the hand and seal of office of such clerk." Sec. 3174, Gen. Stats. 1883.

The act of 1885, "To Provide a System of Recording Brands in This State," does not in any way change the effect of a record, or the manner of proving the same, so far as brands recorded prior to that enactment are concerned.

The sufficiency of the original record of this brand is, therefore, to be determined by that portion of the transcript of record shown by the certificate of the clerk of Larimer county, which is as follows :

"CERTIFIED COPY OF STOCK BRAND.

"STATE OF COLORADO, ⎱ ss.
"LARIMER COUNTY,    ⎰

"*Office of Clerk and Recorder.*

"In accordance with the provisions of an act of the fifth general assembly of the state of Colorado, entitled 'An Act to Provide a System of Recording Brands in This State,' approved April 7, 1885, I, T. J. Montgomery, county clerk and recorder in and for said county, in the state aforesaid, do hereby certify that on this thirtieth day of July, A. D. 1885, the following appears of record in book B, page 68, of the records my office, to wit:

| Brand | Ear mark | Owner | Residence |
|-------|----------|-------|-----------|
| VI | | Geo. S. Richardson. | |

Being the letters V and I
to be placed on the left
shoulder of horses and mules and
left side of cattle.

"And that the above is a true copy of said brand. In testimony whereof, I have hereunto set my hand and affixed the seal of said county this thirtieth day of July, A. D. 1885.

(Seal)          " T. J. MONTGOMERY,
                                 " Clerk and Recorder."

The objections urged against this certification are that the transcript of record fails to show the residence of Geo. S. Richardson, the original owner of the brand, or that he made and filed a certificate, etc. While section 3174 of the General Statutes of 1883 provides that the certificate shall be filed for record in the county wherein the person filing the same resides, it does not require that the record shall show such residence, and the fact of residence may be shown *aliunde* the record, if such residence may not be presumed from the fact of filing the brand in that county.

And, furthermore, the section provides that a person may record his brand in any county of the state in which his stock is liable to stray; and, under section 3174, proof of the right of a person to use such brand may be made by copy of the record, certified to by the county clerk of any county in which the same is recorded.

While it is true that the transcript of record, as thus certified by the clerk of Larimer county, does not show a formal certificate signed by Richardson, it does show the record of a brand in all other respects in conformity with the requirements of the statute. It shows a *fac simile* of the VI brand, describing it as being the letters " V " and " I " placed on the left shoulder of horses and mules and the left side of cattle, and Geo. S. Richardson as owner. We think it would be doing violence to the intent, and defeat the manifest purpose, of the statute to hold that a brand so recorded and

used for at least ten years was not provable under section 3174, because the record, as certified, fails to show, in addition to such *fac simile* and description, a formal certificate signed by the party filing the same.

The certification further shows that a copy of the brand so recorded in Larimer county was, under the requirements of the act of 1885, certified to the secretary of state, and the certificate of the record of the same in that office subsequently recorded in Larimer and Weld counties November 20, 1894,—a date subsequent to the alleged larceny. While this last record, by itself, would not be sufficient to show ownership in Buckingham at a time antecedent to the date it was recorded, yet, when taken in connection with the evidence that Buckingham was in fact the owner of the brand long anterior to, and at the time of, the taking, proof of such subsequent record was admissible and entitled to be considered by the jury in determining the question of ownership. *Priesmuth v. State*, 1 Tex. App. 480. Nor do we think the court below erred in permitting the transfer of such brand from Richardson to Buckingham to be shown by parol evidence. At the time the transfer was made, in 1887, there was no statute regulating the transfer of brands. The only law in force was section 7, of the act of 1885, wherein it was provided:

" Any brand recorded in accordance with the requirements of this act shall be considered as the property of the person causing such record to be made, and shall be subject to sale, assignment, transfer, devise and descent, the same as other personal property."

Subsequently, in 1889, the legislature provided that instruments of writing evidencing any such sale, assignment or transfer should be acknowledged, and that certified copies of the record of such instruments might be introduced in evidence, the same as copies of instruments affecting real estate. But this law was not retrospective, and did not affect the validity of the transfer of the brand in question to Buckingham, or the manner in which such transfer might be proven.

The foregoing considerations do not in any way affect the proof of the ownership of the cattle alleged to have belonged to Davis, since no attempt was made to rely upon the record of his brand as proof of ownership, but the same was mentioned merely by way of identification, and the ownership and identity of the cow and one of the steers described was testified to positively by Davis and his wife. We think the court correctly instructed the jury that it was not proper for them to take into consideration, in determining the ownership of those cattle, the brands that may have been placed upon them, except merely as a mark of identification.

The sixth and seventh assignments of error are based upon the misconduct of the jury and the misconduct of the bailiff in charge, in this, that after the evidence had been submitted and the jury charged, they were taken to the post office by the bailiff, and permitted to receive mail, and that the juror Pease was allowed to separate from the others. Upon the evidence introduced upon the hearing of the motion for a new trial, it appears that the jury were taken to a restaurant for supper; that this juror, having eaten his supper, and while the others were still eating, was obliged to answer the call of nature, and not being able to find a suitable place there, he started for the court house, and when he had gotten a short distance one of the bailiffs started after him; that he went to the water closet, and when he came out went to the jury room, where the bailiff locked him in and went back after the others. He testifies that no one spoke to him in regard to the case while he was separated from the others; that he spoke to no one after he got up from the table except the bailiff, to whom he mentioned his errand, and that he received no communication from any one. H. C. Havener, the bailiff in charge of the jury, testified that the jury were out from 5:30 in the evening until ten o'clock next morning before they rendered their verdict. At half past seven he took the jury to breakfast, and from there took them to the post office. He testifies in chief that he had the impression that one of them got some mail; that

he didn't notice any one in the post office ; didn't talk to any one about the case. On cross-examination he testified:

" When we went to the post office one of the jurors inquired for mail. I am not positive whether he got any or not. Juror was a stranger to me. Don't know who he was. Asked the privilege of inquiring for his mail and I gave him it. Cannot say whether he got anything."

That the foregoing conduct on the part of the bailiff and the jury was an irregularity admits of no doubt, especially in taking the jury to the post office for the purpose of procuring mail; but whether such irregularity affords sufficient ground for a new trial is a question upon which there is much diversity of opinion among the courts of the different states. On the one hand, it is held that the mere separation of the jury, under circumstances that would permit them to be tampered with, is in itself sufficient to entitle defendant to a new trial. On the other hand, it is held that something more than a mere separation must be shown to justify the setting aside of the verdict. In the case of *Jones v. The People*, 6 Colo. 452, the latter rule seems to be sanctioned. In discussing the question as to whether misconduct in the use of intoxicating liquors by the jury was a sufficient ground to set aside the verdict, the court says:

" If a verdict is to be set aside for misconduct of the jury, it must be for legal reasons alone. If by such misconduct a party litigant, or, in a criminal case, a party on trial, has been prejudiced, the verdict should be set aside, for the law requires a fair and impartial verdict. If the justness, soundness, or fairness of the verdict has been impaired, or in any way vitiated, by the use of liquors by the jury, such verdict should be set aside. But if no such consequences be shown, or are fairly inferable, if no juror was intoxicated, or in any manner or degree affected in his deliberations or judgment, for what reason in such case is the verdict to be set aside ? \* \* \* The real question in the case is, has the party to be affected by the verdict been prejudiced by the conduct or misconduct of the jury ? "

And since it is affirmatively shown from the evidence introduced that the separation of the juror Pease was a necessity, and did not in any way prejudice the plaintiff in error, and the evidence failing to show with positiveness that any mail was delivered to any of the jurors, we cannot infer that the misconduct of the jury in this respect in any way affected the rights of plaintiff in error to his prejudice.

The misconduct of the bailiff in taking the jury to the post office for the purpose of procuring mail was reprehensible, although he acted in ignorance of his duty in the premises. Yet, in the absence of any showing that such misconduct prejudiced the rights of the defendant, we cannot hold that the court below erred in refusing to set aside the verdict on this ground.

The error predicated upon the refusal of the court below to give certain instructions asked in behalf of defendant, we think is not tenable, for, while the instructions asked embody correct propositions of law, they were given in substance by the court in its general charge. We think, upon a review of the entire record, that no error intervened. upon the trial of the cause that would justify a reversal of the judgment of the court below. The judgment is therefore affirmed.

*Affirmed.*