Decided 26 June, 1899.

## STATE v. HANNA.

[57 Pac. 629.]

1. INDICTMENT FOR RECEIVING STOLEN PROPERTY.—An indictment, under Section 1774* of Hill's Ann. Laws, for receiving stolen property sufficiently describes it as "two horses and thirty mares and twenty geldings, * * * then and there" the personal property of the prosecuting witness.

2. INDICTMENT—NAME OF THE THIEF.—Under statutes like Section 1774,* Hill's Ann. Laws, which make a substantive offense of receiving and concealing stolen property knowing it to have been stolen, it is not necessary to name the thief in the indictment, but it may be alleged that the property was then lately before stolen.

3. EVIDENCE OF STOCK BRAND AND ITS RECORD.—Evidence as to the stock brand used by the prosecuting witness, and a certificate thereof recorded by him after the larceny of the stock, while not of itself proof of ownership prior to the date the brand was recorded, was admissible in order to show the jury a *fac simile* of the brand of the prosecuting witness and that it was identical with the one on the horses received by defendant.

4. FLIGHT OF ACCOMPLICES AS EVIDENCE.—The flight of some of the persons whom the prosecution claims were implicated in the larceny of property, for receiving and concealing which the defendant is on trial, is admissible to establish the fact of the theft, which is an essential step in the prosecution.

5. EVIDENCE OF THE POSSESSION OF OTHER PROPERTY.—In a prosecution for receiving stolen goods, evidence that certain horses sold by defendant along with the horses described in the indictment, belonged to a third person, was admissible, where the evidence in reference to such horses and their ownership was so connected with the evidence tending to show that defendant received the stolen goods as to form a part of one entire transaction.

6. INSTRUCTION AS TO ORAL STATEMENTS.—It was not error to instruct the jury to look with caution on the evidence of oral admissions or verbal statements made by a witness or party where there was evidence of contradictory statements by all parties concerned.

From Umatilla:   STEPHEN A. LOWELL, Judge.

William Hanna objected to being convicted of receiving stolen property, and appealed from a judgment sentencing him to the penitentiary.          AFFIRMED.

*NOTE.—This section reads as follows: "If any person shall buy, receive or conceal or attempt to conceal any stolen money or property, knowing or having good reason to believe the same to be stolen, such person, upon conviction thereof, shall be punished," etc.—REPORTER.

For appellant there was a brief over the names of *Thos. Fitz Gerald* and *Carter & Raley*, with an oral argument by *Mr. Fitz Gerald* and *Mr. J. H. Raley*.

For the state there was a brief over the names of *Henry J. Bean*, District Attorney, *James A. Fee*, and *D. R. N. Blackburn*, Attorney-General, with an oral argument by *Messrs. Bean* and *Fee*.

MR. JUSTICE BEAN delivered the opinion of the court.

On the sixteenth of January, 1899, the defendant was indicted for a violation of Section 1774, Hill's Ann. Laws. The charging part of the indictment is that "the said William Hanna, on the eleventh day of November, A. D. 1898, in the County of Umatilla and State of Oregon, did unlawfully and feloniously buy, receive, have, and conceal two horses and thirty mares and twenty geldings, which said horses, mares, and geldings were then and there the personal property of Peter Nelson, and of the value of $10 each, and of the aggregate value of $520, and which said horses, mares, and geldings had been then lately before feloniously stolen, taken, and carried away by certain evil disposed persons within said county and state; he, the said William Hanna, then and there well knowing, and having good reason to believe, the same to be stolen—contrary to the statute in such cases made and provided," etc. The defendant demurred to the indictment, and, his demurrer being overruled, he pleaded not guilty, and the cause went to trial before a jury, resulting in a verdict of "Guilty, as charged." From the judgment entered thereon he appeals, assigning as error the overruling of such demurrer and the admission of certain testimony on the trial.

1. It is contended at the outset that the indictment is fatally defective, because it does not sufficiently describe

the property alleged to have been received and concealed
by the defendant, and also because it does not disclose
the name of the person by whom such property was
stolen. No more definite or accurate description of the
property is required in an indictment for receiving stolen
property than in an indictment for larceny, and under
the rule in larceny cases the description under considera-
tion is sufficient : 1 McClain, Cr. Law, §§ 593, 594 ;
Rapalje, Larceny, §§ 82, 83.

2. Upon the other objection, counsel for the de-
fendant make a strong and plausible argument, which
would be entitled to great consideration if the question
was not settled by the overwhelming weight of authority.
The doctrine of nearly, if not quite, all of the adjudged
cases is that, under a statute like ours, which makes
the crime of feloniously receiving stolen goods, know-
ing them to be stolen, an independent and substantive
offense, it is not necessary to state in the indictment the
name of the thief. Mr. Rapalje, in his work on Lar-
ceny, says : ''In general, an indictment for receiving
stolen goods, knowing them to be stolen, need not
state the name of the person who stole them ; and the
allegation that his name is unknown to the grand jury is
equally immaterial ; but, if alleged, it must be proved.''
Rapalje, Larceny, § 320. And Mr. McClain says : ''The
indictment for receiving or concealing alone (not charg-
ing the larceny as a substantive offense) need not de-
scribe the stealing of the goods with the same techni-
cality as would be necessary in an indictment for such
larceny. It is sufficient to allege that the goods were
'then lately before stolen,' and that the defendant knew
them to have been stolen, without alleging technically
the stealing, taking, and carrying away. Nor is it neces-
sary to allege by whom the theft of the goods was com-
mitted, or that the name of the person committing the

theft is unknown. It seems that it is not necessary, even, to allege from whom the goods were received. Neither is it required that the indictment state when and where the original larceny was committed :'' 1 McClain, Cr. Law, § 719. And in *Commonwealth* v. *Hogan*, 121 Mass. 373, it is held that an indictment for receiving stolen goods need not name the thief, although his name was known to the attorney for the government and to the grand jury before the finding of the indictment. This doctrine seems to proceed on the theory that the gravamen of the offense created by the statute is, not the receiving stolen goods from any particular person, but receiving them with knowledge of their having been stolen. The question for trial in such a case is whether the goods were stolen and received by the defendant knowing the fact. The name of the thief is immaterial : 2 Bishop, New Cr. Proc. § 982 ; *Rex* v. *Jervis*, 6 Car. & P. 156 ; *State* v. *Smith*, 37 Mo. 58. See, also, *State* v. *Hazard*, 2 R. I. 474 (60 Am. Dec. 96), where the question is discussed in the light of the common-law authority, and 20 Am. & Eng. Enc. Law (1 ed.), 450, where the authorities upon the question are collated.

3. It is claimed that the court erred in admitting in evidence testimony as to the stock brand used by the prosecuting witness, and a certificate thereof recorded by him after the crime was alleged to have been committed, and a few days before the trial. The objection to the admission of this testimony, as we understand it, is that the brand was evidence of ownership only from and after the date of record, as provided by the act of 1893 (Laws, 1893, p. 51, § 1). But we do not understand that evidence of the brand was offered or admitted as proof of ownership, but as showing the identity of the horses alleged to have been stolen with those received and shipped by the defendant, and the certificate was

admitted as an impression or *fac simile* of such brand. There was evidence of ownership independent of the brand, and it was only important as a means of identifying the property in question. Peter Nelson, the prosecuting witness, testified that, in November, 1898, he was the owner of about one hundred head of horses running on the Badger Spring Range in Umatilla County, and that they were branded with the quarter circle N brand, which he had used for twenty-seven or twenty-eight years, and that there was no other or similar brand in that section of the country; that he last saw the horses about the fourth or fifth of November, when he had them up for the purpose of branding the colts; that he turned them out on the range again, and about the middle of the month they were missed, and although he immediately made diligent search for them, he was never able to find more than seven or eight head, which were too poor to be driven away. There was other evidence given by the prosecution tending to show that, about the ninth of November, three persons, who were recognized as Hill, Ogg, and Morse, were seen driving from this range about seventy-five or one hundred head of horses branded with the Nelson brand, and that, some time during the night of the tenth of November, these parties, or some of them, drove horses into Pendleton, answering the description of those belonging to Nelson and branded with his brand, and delivered the same to the defendant Hanna, who shipped them on the eleventh to the Western Packing Company, at Portland, for use at the Linton cannery, a few miles below the city. This, together with other testimony given on the trial, was abundantly sufficient upon the question of ownership, if believed by the jury, to sustain the allegations of the indictment. Under these circumstances, the admission of testimony in reference to Nelson's brand, and the certifi-

cate thereof, was not error. While neither the certificate nor the brand by itself would, perhaps, be proof of ownership prior to the date at which the brand was recorded, yet, for the purpose for which the evidence was offered and admitted, it was, under the authorities, competent : Underhill, Ev. § 297 ; 4 Am. & Eng. Enc. Law (2 ed.), 876 ; *Priesmuth* v. *State*, 1 Tex. App. 480 ; *Chestnut* v. *People,* 21 Colo. 512 (42 Pac. 656) ; *Brooke* v. *People*, 23 Colo. 375 (48 Pac. 502).

4.   It is next claimed that the court erred in admitting testimony of the flight of Ogg and Morse, two of the persons whom the prosecution claimed were implicated in the larceny of the property for receiving which the defendant was convicted. Under the indictment, it was an essential step in the prosecution, and material for the state, to prove that the property received by the defendant was in fact stolen, and any evidence tending to support that issue was competent on the trial of the defendant : *State* v. *Smith*, 37 Mo. 58 ; *Reilley* v. *State*, 14 Ind. 217 ; *Rex* v. *Blick*, 4 Car. & P. 377. Mr. McClain says : "Proof of the larceny of the goods alleged to have been received is essential to establish the *corpus delicti* of the crime of receiving, and therefore cannot be established by the uncorroborated confession of the accused. Such larceny is to be established as if it was the crime charged :" 1 McClain, Cr. Law, § 724. And it is unquestioned that the attempted escape of Ogg and Morse was material evidence upon this issue in the case.

5.   It is next claimed that the court erred in permitting the witness McCarty to testify that certain horses, branded HC, received at the Linton cannery along with the horses described in the indictment, belonged to one Jack Morton ; but the evidence in reference to these horses and their ownership was so intermingled and con-

nected with the evidence tending to show that defendant
committed the crime charged in the indictment as to
form a part of one entire transaction, and was, there-
fore, properly admissible. It is true there was no tes-
timony that the Morton horses were stolen, or that
defendant had committed any crime by including them
in the shipment with the Nelson horses; but this would
not render the admission of the testimony, under the
circumstances, reversible error.

6. The court charged the jury that they "should look
upon the evidence of oral admissions or verbal state-
ments made by a witness or party with caution, for the
exact language might not have been correctly under-
stood, or the party called to prove the same might not
be able to remember the exact words spoken." It is
claimed that this instruction was erroneous, because it
practically advised the jury that certain witnesses, called
to prove verbal admissions or statements of the prosecut-
ing witness, were to be distrusted. But this is not a
fair interpretation of the instruction as given, and was
manifestly not the thought intended to be conveyed by
the court. There was evidence given on the trial tend-
ing to show incriminating and contradictory statements
made by the defendant, and also that the prosecuting
witness said that he gave Ogg permission to gather up
some of his horses from the range, and sell them, but
did not suppose he was going to take the entire band.
The defendant and prosecuting witness both denied mak-
ing the statements attributed to them, and it was mani-
festly in view of this condition of the testimony that the
instruction complained of was given. Its object and
purpose was to caution the jury against giving undue
weight to alleged oral admissions or verbal statements,
because, as explained by the court, "the exact language

may not have been correctly understood," or the witness may not "be able to remember the exact words spoken." This is elementary law : 1 Greenleaf, Ev. § 200.

AFFIRMED.

Decided 7 August; rehearing denied 2 October, 1899.