(January 3, 1907.)

STATE OF IDAHO, Respondent, v. JESSE DUNN and JESSE DE MASTERS, Appellants.

[88 Pac. 235.]

LARCENY OF LIVESTOCK—BRANDING OF LIVESTOCK—OWNERSHIP OF BRAND—PAROL EVIDENCE NOT ADMISSIBLE—OWNERSHIP IN BRAND ONLY ACQUIRED IN CONFORMITY WITH LAW.

1. Under the provisions of sections 5 and 14 of the act of March 7, 1905 (Sess. Laws 1905, p. 352), known as the livestock and branding law, parol evidence is not admissible to prove ownership of a stock brand.

2. Where a stock brand has been recorded in compliance with the provisions of the act of March 7, 1905 (Sess. Laws 1905, p. 352), known as the livestock and branding act, the production of the original certificate issued by the state recorder, or a certified copy of the record, constitutes *prima facie* evidence of the ownership of the

brand and of the right of possession of the animals on which the same is found.

3. Under the provisions of the above-mentioned act, no ownership can be acquired in a stock brand or the right to use the same in any other manner than by a compliance with the provisions of the statute for the recording of brands and the transfer thereof.

4. One who has failed to record his brand as required by the provisions of the statute must prove his ownership of the animal on which an unrecorded brand is found in the same manner as he would prove his ownership of any other personal property or of an unbranded animal.

(Syllabus by the court.)

APPEAL from the District Court in and for Boise County. Hon. George H. Stewart, Judge.

Prosecution by information on the charge of grand larceny. Defendants were convicted and sentenced to a term in the state penitentiary, and appealed from the judgment and an order denying their motion for a new trial. *Reversed.*

Lot L. Feltham, for Appellants.

When the trial court permitted, over the objection of the defendants, the following question and answer: "Q. What is your brand? A. Quarter circle A, on ————," an error was committed that must, from the nature of things, be considered reversible error; else the legislature had as well added to said section 14 of the 1905 law the following clause: "Parol evidence shall be inadmissible to prove the ownership of a brand, *unless the trial court want to admit parol evidence to prove the same.*"

The case of *State v. Rathbone,* 8 Idaho, 161, 67 Pac. 186, was decided in 1901, and the legislator who introduced that bill in 1905 in all probability had that decision in mind, else it would not have been necessary to have worded the fourteenth section of the 1905 law so near like section 1179, Revised Statutes, and then added the clause that parol evidence would be inadmissible to prove the ownership of a brand.

The 1905 stock brand law goes to the question of proof and affects the remedy only. When a statute affects the remedy

only, and by giving it a retroactive operation no vested rights will be affected, it will be given such operation by the courts unless it plainly appears that the legislative intent was otherwise. (*Barnett v. Vanmeter,* 7 Ind. App. 45, 33 N. E. 666; *Johnson v. Board,* 107 Ind. 15, 8 N. E. 1.)

No man or corporation has a vested right in the rules of evidence. They pertain to the remedies provided by the state for its citizens, and do not constitute a part of any contract. They are subject to control and modification by the legislature, whether affecting proof of existing rights, or rights subsequently acquired. Changes in them may be made applicable to existing causes of action. (*Chicago B. & Q. R. v. Jones,* 149 Ill. 361, 41 Am. St. Rep. 278, 37 N. E. 247, 24 L. R. A. 141; *Marks v. Crow,* 14 Or. 382, 13 Pac. 55.)

J. J. Guheen, Attorney General, Edwin Snow, Philip R. Hindman and H. L. Fisher, Prosecuting Attorney, for the State.

The stock brand law must be considered in the light of a reasonable interpretation of all its provisions regarded as one harmonious whole. The courts will take judicial notice of whatever may affect the validity or meaning of a statute. They will take notice of events generally known within their jurisdiction; of the history of legislation and of the reasons urged for and against the passage of a law. (2 Sutherland on Statutory Construction, sec. 310; *Adams v. Yazoo etc. R. R. Co.,* 75 Miss. 275, 22 South. 824.)

The application of the statutory requirement to the conditions in this case would be of a retroactive character. The law does not require that all brands must be filed with the state recorder on October 1, 1905, or within any particular time thereafter. Even under the literal interpretation contended for on behalf of appellants, it cannot be argued that the trial court erred in permitting the only proof of ownership available in this particular case, where the dispute as to ownership arose prior to taking effect of the statutory requirement.

The "controlling purpose" of the stock brand law is the protection of the stock growers. Surely, it will not be perverted to defeat that end and the ends of justice, by enabling criminals to escape in cases where proof of ownership, which is always essential to secure a conviction, must depend upon parol evidence. The provisions referred to must be regarded as supplementary to, and not in derogation of, the well-known rules of the common law of evidence, as embodied in our Code of Civil Procedure. In this view, under what is known as the "best evidence rule," parol evidence would be inadmissible to prove the ownership of a recorded brand, because not the best evidence available; but where a brand has not been recorded, parol evidence being the best evidence available, is admissible to prove ownership. (*State v. Rathbone,* 8 Idaho, 161, 174, 67 Pac. 186.)

AILSHIE, J.—The defendants were convicted of the crime of grand larceny, and appealed from the order and judgment denying a motion for a new trial. The first specification of error is directed against the ruling of the court in admitting plaintiff's exhibit 1, which purports to be a bill of sale of the animal that is alleged to have been stolen, given by one John Carter to the complaining witness. This instrument is not very intelligible, but that is no sufficient reason for its rejection in evidence for whatever information it might furnish the jury. There was no error in its admission.

The next assignment of error is directed against the admission of parol evidence to prove the ownership of the brand. The prosecuting witness Neilson claimed to be the owner of the stolen animal, and he traced his title to the animal back to one Mickey Morton. Neilson seems not to have had any brand recorded and had never branded this animal. Morton, however, who claimed to have been the original owner of the animal, had branded it, as he testifies, and also shows by other witnesses, with what he terms the quarter circle A brand, made thus: A. It is not shown that Morton had ever caused his brand to be recorded in compliance with law, and counsel

for the defendants objected to the introduction of parol evidence of Morton's ownership of the brand on that ground, and his objection was overruled. The witness testified that some years ago the quarter circle was broken off his brand, and that he had been in the habit of branding with the A and then running the quarter circle above the A with the heel of the letter. The defendants, on the other hand, claimed that the animal belonged to one Ben Allen, and that he had instructed them when riding the range to get this animal for him if they found it. Allen appeared as a witness on behalf of defendants and testified that the animal belonged to him, and that the brand thereon was his brand, and he produced the certificate of the state recorder of brands showing that his brand was the letter A on the left shoulder with a bar over it, thus: A̅. There was a sharp conflict among the witnesses as to whether the animal alleged to have been stolen had been originally branded with the bar A brand or quarter circle A brand. At the trial it appeared quite clearly that at some time both the bar and the quarter circle had been placed above the A, but the difference arose as to which had been placed there at the time the A was burned on the animal.

Counsel for defendants argues with great earnestness and much reason that the ruling of the trial court in permitting parol evidence as to the ownership of this brand was in direct violation of the provisions of Senate Bill No. 61, known as the livestock and branding law, approved March 7, 1905 (Sess. Laws 1905, 352). That act provides that the state auditor shall be state recorder of brands, provides for the recording of brands for all livestock, how the record shall be made and kept, and the manner and method of designating brands, and sections 5 and 14 thereof, which are relied on here and are particularly applicable to the question involved are as follows: "Sec. 5. All brands shall be recorded with the state recorder. No evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this state unless the brand shall have been recorded as provided in this act. . . . . Sec. 14. In

all suits at law or in equity, or in any criminal proceedings when the title or right of possession is involved, the brand of any animal shall be *prima facie* evidence that the animal belongs to the owner or owners of the brand, and that such owner is entitled to the possession of the said animal at the time of the action: Provided, that such brand has been duly recorded as provided by law. Proof of the right of any person to use such brand shall be made by a copy of the record of the same, certified to by the state recorder in accordance with the provisions of this act, or the original certificate issued to him by the state recorder. Parol evidence shall be inadmissible to prove the ownership of a brand." A reading of these sections at once discloses that they are couched in clear, plain and unmistakable language, and it does not seem that the intent thereof can easily be mistaken. It is first provided that: "No evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this state unless the brand shall have been recorded as provided in this act." Then section 14 provides that in any case, either civil or criminal, the proof of the recording of the brand in compliance with law shall be *prima facie* evidence of ownership and the right of possession of the animal. But the legislature, still fearful lest on some pretext parol evidence might be admitted without first showing compliance with the law, closes section 14 with this admonition: "*Parol evidence shall be inadmissible to prove the ownership of a brand.*"

Counsel for the state argue that the statute is absurd if taken in its literal meaning, and that it should be so construed as to permit parol evidence. This contention does not merit consideration, for the reason that the language is plain and unmistakable in its meaning and import, and the court has no authority to say that the legislature did not mean what they have clearly said. The subject is one over which they have plenary power. They might declare that any particular class of evidence shall be inadmissible to establish any particular fact or issue. They may prescribe the modes of proof and the manner of making proof, and the effect such proof

shall have in the courts. (*Fing Yue Ting v. United States,* 149 U. S. 698, 37 L. ed. 905, 13 Sup. Ct. Rep. 1016; 11 Am. & Eng. Ency. of Law, 550, and notes.)

Section 1179 of the Revised Statutes is substantially the same as section 14 of the act above quoted, with the exception that the last sentence found in section 14, prohibiting the admission of parol evidence, was not contained in the former statutes. In *State v. Rathbone,* 8 Idaho, 161, 174, 67 Pac. 186, this court, referring to section 1179 of the Revised Statutes, made the suggestion that the statute did not prohibit parol evidence of ownership of an unrecorded brand. The act of March 7, 1905, having been passed subsequent to the decision in *State v. Rathbone, supra,* it must be assumed that the last sentence in section 14 was added purposely in order to finally settle the question as to the admission of parol evidence in such cases. Indeed, we think there can be no fair and reasonable question of doubt upon that point. The statute, however, appears on its face to be a very reasonable and salutary provision, and it was the evident purpose of the legislature to prohibit different persons from using the same brand on their animals, which practice prior to this statute led to interminable litigation and conflicts between owners of livestock—sometimes honest differences and sometimes otherwise. It was evidently intended to enforce obedience to the statute by excluding all other methods of proving owner-ship in a brand than by a compliance with the statute. Of course, it is no more difficult now than it ever has been to prove ownership in an unbranded animal, and this statute puts the owner of an animal branded with an unrecorded brand in the same position with reference to proof of its ownership as if it had no brand on it at all. Although owner-ship of an unrecorded brand may not be proven by parol, still the brand itself may serve as the means to the owner himself for identification of the animal the same as any other artificial or natural mark might do. An animal might have a wire cut on it, which would serve as the only means by which the owner could identify that animal, yet he would have no special right, property or ownership in that particular kind

of a wire cut, and the fact that such a wire cut was on his animal would not be proof that he was the owner of all animals that had that wire cut on them, nor would it furnish in itself evidence of ownership in any particular person. While a man may mark or brand his animal in any manner he sees fit, he can acquire no property right in such mark or brand, nor can he invoke the protection of law in its use or invite any presumption as to ownership of the animal on which such mark or brand has been placed, unless it has been selected, designated and recorded in conformity with law. Without first designating and recording it, every other citizen will have an equal and like right to the use of such brand, and it was just such confusion and disorder that the law meant to provide against. Without a compliance with the branding law, a man may still prove ownership of an animal marked with an unrecorded brand, but he may not be heard in court to say that he is the owner of such brand or that he has any property right therein.

This case is a very apt illustration of the necessity of the enforcement of the branding laws. Here the witness testifies himself that he had no brand that would fill the legal requirements of the statute in respect to the particular brand of which he claimed ownership. This brand was originally made with the quarter circle above the letter A. The brand when made and recorded and used in accordance with law would always appear at a particular and specified place on the animal with the letter in a given position, with the quarter circle in every instance the same distance from the letter and over the letter when in its natural position. On the other hand, as the witness was using the brand with the quarter circle detached, and using the heel of the letter to make a running brand over the A for the quarter circle, it might be any length and any distance from the letter. Indeed, it is shown by affidavits on motion for a new trial that this witness had horses in his possession which he claimed that were branded with the letter A inverted and the quarter circle over it, thus: ⩑. Since the case must be reversed on the ground of the improper

admission of evidence as above suggested, we will not enter into any discussion as to the merits of the affidavits on motion for a new trial.

It is argued by the state that since Morton sold the animal prior to the date on which the brand was required to be recorded under the act of March 7, 1905, the rule of evidence prescribed by the act is not applicable here. There is no contention, however, but that it was in force before the trial, and this statute only dealing with a rule of evidence and not with the remedy itself, it was applicable to the case at the time of the trial. (*Boise Irr. etc. Co. v. Stewart,* 10 Idaho, 38, 77 Pac. 25, 321.)

The court erred in admitting parol evidence of the ownership of an unrecorded brand, and it was equally erroneous, after such evidence had been admitted, to refuse defendants' requested instruction No. 3, to the effect that such evidence should not.be considered by the jury in the absence of proof of the brand having been recorded. The judgment is reversed and the cause remanded, with direction to grant a new trial.

Stockslager, C. J., concurs.

SULLIVAN, J., Dissenting.—I cannot concur in the conclusion reached by my associates. The horse in question is alleged to have been stolen on the twentieth day of June, 1905. The stock brand law referred to in the opinion of my associates became a law on March 7, 1905, section 6 of which is as follows: "Sec. 6. On or before the first day of June, 1905, after the passage of this act, every stock-grower owning sheep, and on or before the first day of October, 1905, the owners of all other livestock using any recorded brand, shall forward to the state recorder a copy of such recorded brand, duly certified to by the county recorder of the county in which such brand is recorded. Such person shall pay the recorder a fee of twenty-five cents, and shall forward with the brand so certified a fee of fifty cents to the state recorder to pay for the recording of the same." Section 7 of the same act is as follows: "Sec. 7. Upon receipt of such certificate and fee

the state recorder shall record the same: *Provided,* such brand is not contrary to the provisions of this act: And, *provided further,* that in case of a conflict of recorded brands, the one first recorded with the county recorder as heretofore required by law shall take precedence, and the other shall be null and void. All brands recorded at the time of the passage of this act which shall not be recorded within the said stated time with the state recorder shall be null and void.'' Section 8 of the same act provides as follows: ''Any stock-grower whose brand is not recorded desiring to use any brand on any stock shall make and sign a certificate setting forth a fac-simile and description of the brand which he desires to use, and shall file the same with the state recorder, which recorder shall record the same in a book kept by him for that purpose, and from and after the filing of such certificate the stock-grower filing the same shall have the exclusive right to use such brand within the state. Such stock-grower, upon filing such brand, shall pay to the state recorder for recording the same a fee of one dollar: *Provided,* that the state recorder shall not file or record such brand if the same has already been filed or recorded by him in favor of some other stock-grower. If the brand is to be used on sheep, such brand shall not be filed for recorded until after June first, 1905; and if it is to be used on other stock not to be filed until after October first, 1905.''

Section 6 refers to recorded brands or brands that have been recorded in the office of the county recorder of some county of the state. Section 8 provides for the recording of brands that have not been recorded in the office of the county recorder of any county of the state. It will be observed from the provisions of said section 6 that stock-growers other than those owning sheep who had recorded their brand in some county should forward to the state recorder a copy of such brand duly certified, on or before the first day of October, 1905. Section 7 of said act provides, among other things, that upon receipt of the certificate of the county recorder of the brands provided for in section 6 and of the proper fee,

the state recorder shall record the same; provided, in case of conflict of recorded brands, the one first recorded with the county recorder shall take precedence, and the other shall be null and void, and section 8 provides that any stock-grower whose brand has not been recorded in the office of some county recorder, desiring to use any brand on stock other than sheep, should make and sign a certificate setting forth a fac-simile and description of the brand which he desires to use, and shall file the same with the state recorder, and it is provided that the state recorder shall not record such brand °if the same has already been filed or recorded in favor of some other stock-grower, and that such brand shall not be filed until after the first day of October, 1905.

Keeping these provisions of said law in mind, we will apply them to the facts of case at bar. The complaining witness purchased the horse in question on May 2, 1905, from one John Carter. Carter had sometime theretofore purchased said horse from said E. E. or "Mickey" Morton, who had raised him and had placed his brand upon him, which brand was testified to on the trial of this case. It does not appear from the evidence whether said Morton had recorded said brand with any county recorder. He had parted with the horse long before said brand law required the stock-raiser to have his brand recorded by the state recorder. The horse is alleged to have been stolen on June 20, 1905, and in case Morton had theretofore recorded his brand with the county recorder under the provisions of said section 6, he was required to record said brand with the state recorder on or before the first day of October, 1905, and if he had not recorded his said brand with the county recorder, by the provisions of section 8, he was prohibited from recording said brand with the state recorder until after October 1, 1905. Carter had perhaps purchased this horse from Morton prior to the passage of said brand law, and Neilson had purchased him from Carter long before Morton was required to record his brand with the state recorder. Supposing Morton had died or gone out of the stock business, or had neglected and refused to record said brand,

is it reasonable to suppose that the legislature intended, in the passage of that act under said state of facts, to prohibit the receiving of any testimony of the Morton brand on that horse in a case in court? Neilson had no power to compel Morton to record his brand. The law itself did not require him to do so until subsequent to the time that Neilson had purchased said horse and months after the horse is alleged to have been stolen. And supposing, under the provisions of said section 6, some other person had filed the same brand with the county recorder and had proceeded under law to have such brand recorded with the state recorder, unless Morton had recorded his brand with the county recorder prior to the recording of the brand last referred to, the state recorder is prohibited from filing the Morton brand; and supposing Morton had not recorded his brand with the county recorder and had offered his brand for record in the office of the state recorder on the afternoon of the first day of October, 1905. that being the first day such brands could be recorded under said law, and some one had recorded a similar brand on the forenoon of that day, under the provisions of said section 8, the state recorder is prohibited from recording the Morton brand. And still under the construction placed upon this law by my associates, Morton's brand or mark on this horse cannot be proven, when under such facts Morton could not have recorded his brand. I do not claim that the proof that Morton's brand was on said horse was *prima facie* evidence of ownership in Neilson, but that it was competent to go to the jury as tending to prove ownership in him.