Submitted on briefs May 31, reversed and remanded July 17, 1917.

# STATE v. RANDOLPH.

(166 Pac. 555.)

**Animals—Larceny—Stock Brand—Evidence of Ownership and Identification.**

1. Laws of 1915, page 43, makes the state veterinarian state recorder of brands, and requires all brands to be recorded with him and not elsewhere, and provides that "no evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this state, unless the brand shall have been recorded as provided in this act," and that one who has had a brand recorded in any county for the greatest length of time shall have the exclusive right for 60 days to have said brand recorded. G. had had the brand HU recorded in his county under a prior statute, but failed to comply with the 1915 law. M. had complied with the 1915 law and secured a certificate of his exclusive right to the use of the same brand. R. was charged with stealing a steer subsequent to the time when the 1915 law became effective. There was testimony that R. had killed a steer, and that the hide from such steer had an HU brand; R. claiming that he had bought the steer. *Held,* that a certified copy of the certificate issued to M. was properly admitted in evidence, and that a certified copy of G.'s certificate as well as oral evidence that G. had placed an HU brand on the right hip of his cattle was properly excluded.

[As to brands on animals as evidence of ownership, see note in Ann. Cas. 1913E, 133.]

**Animals—Constitutional Law—Brands—Statutory Regulation—Vested Rights.**

2. Laws of 1915, page 43, providing that ownership or identification of stock shall not be permitted to be proved by brands not recorded, since it does not make recorded brands conclusive evidence of ownership, is not invalid; it being merely a rule of evidence in which no one has a vested right.

**Criminal Law—Refusal to Instruct—Prejudicial Error.**

3. In a prosecution for stealing a steer, where the evidence foi the state was circumstantial, and defendant had offered evidence tending to explain possession, it was prejudicial error to refuse to instruct concerning the possession of the stolen goods.

From Klamath: DELMON V. KUYKENDALL, Judge.

In Banc. Statement by MR. JUSTICE HARRIS.

C. C. Randolph was convicted of a violation of Section 1950, L. O. L., upon an indictment which charges that he stole a steer in Klamath County, on Novem-

ber 20, 1915, belonging to M. S. Mayfield. Randolph resided on a homestead in the forest reserve in Klamath County. On March 30, 1916, he was seen at his home skinning the right hind quarter of a beef. Randolph was arrested on April 6, 1916, and on that day two barrels and a keg were found in his house containing pickled meat. The defendant had placed the hide in water for the purpose of slipping the hair; and when asked for the hide on the day of his arrest he produced it. When examined, it was discovered that part of the hide had been scalloped or cut out and beneath the scallop on the right hip was a brand which the witnesses described as HU connected. The brand was described by one of the witnesses as a hair brand, for the reason that it was not deep and did not show distinctly.

M. S. Mayfield lives on a ranch which he owns in Crook County, and he also owns a ranch in Klamath County "a little farther" than two and a half miles from the Randolph homestead. In addition to cattle kept by him in 1915 on his two ranches, Mayfield placed one hundred head on range within the forest reserve. Among the hundred head were twenty-five three year old steers, and among the three year old steers was one Hereford which Mayfield had purchased in Wyoming when it was a calf. When Mayfield purchased this Hereford it had a double bit ax brand on each hip and, in the spring of 1913, he put his brand on the right hip and below the double bit ax brand. Mayfield claimed that the hide produced by Randolph on April 6, 1916, was the hide of the three year old Hereford steer that had originally been purchased in Wyoming.

Mayfield has been in the cattle business for more than twenty years and, since about 1900, has used a

brand which is described as HU connected. On July 23, 1915, the state veterinarian as state recorder of brands issued, filed and recorded a certificate awarding to M. S. Mayfield the exclusive right in the state to brand cattle on the right hip with **HU**. In addition to other evidence offered for the purpose of showing that Mayfield owned the animal from which the hide was taken, a certified copy of the certificate issued by the state veterinarian was received in evidence over the objection of the defendant.

Randolph attempted to offer evidence tending to show that the HU brand had not been used by Mayfield exclusively, but that it had also been used by B. S. Grigsby. The court sustained the objections of the state and refused to permit the introduction of any evidence concerning the Grigsby brand. B. S. Grigsby has been a stock-raiser residing in Klamath County for about thirty-eight years; and, during the last thirty years of that period, the only brand used by him has been an HU connected. Although Grigsby used this one brand for many years he did not attempt to record it until May 26, 1914, when he filed a certificate with the county clerk of Klamath County claiming "the sole and exclusive right" to use an **HU** on the right hip of cattle, and the county clerk duly recorded a certificate purporting to grant the right claimed. Grigsby always branded cattle purchased by him immediately after the purchase and those raised by him were branded when they were "from two weeks to two or three months old." During the season of 1915 Grigsby had cattle running on the range in Klamath County. Three head were missed in the fall of 1915 and while two were found in February or March, 1916, the third was never located. The evidence does not disclose the exact distance, but

it is a fair inference to say that some of the Grigsby cattle ranged from twenty to forty miles from the place where the one hundred head of Mayfield cattle were ranging in the forest reserve. Randolph claimed that he bought the beef "from a couple of men that came through my place the latter part of October" in 1915.

The principal assignments of error relate to the ruling of the court in receiving the certified copy of the certificate issued to Mayfield, an instruction to the jury concerning the effect of the Mayfield certificate, the refusal of the court to permit the defendant to introduce a certified copy of the Grigsby certificate recorded in Klamath County or to offer oral evidence showing that Grigsby had placed an **HU** brand on the right hip of his cattle or that the cattle missed by him in 1915, had been branded **HU** on the right hip, the refusal to give three requested instructions on circumstantial evidence, and a failure to give a requested instruction relative to the possession of stolen property.

Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Mr. W. H. A. Renner.*

For the State there was a brief over the names of *Mr. John Irwin* and *Mr. N. G. Wallace.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The refusal of the trial court to allow evidence concerning the Grigsby brand was based upon the theory

that the statute in force at the time of the trial prohibited the court from receiving the evidence offered by the defendant. If it was competent to show that Grigsby used an **HU** brand on the right hip of his cattle it must necessarily follow that the ruling of the court was prejudicial error. The correctness of this ruling depends upon the validity of Chapter 33, Laws 1915, which was in force at the time of the commission of the alleged crime as well as at the time of the trial; and, hence, it becomes appropriate first to notice the statutes regulating brands before the passage of Chapter 33 and then to call attention to the provisions of the latter statute.

When the Grigsby brand was recorded the law required that "all brands shall be recorded in the county where owner resides, and in such other county where such animals usually range; and no evidence of ownership by brand" was permitted in any court unless such brand was recorded: Section 5524, L. O. L. A person desiring to use a brand made and signed and then filed with the county clerk in the county where he resided or in the county where his cattle usually ranged, a certificate containing a facsimile and description of the brand, and a designation of the place on the animal where it was intended to apply the iron; and from the time of the filing of such certificate the person filing it had the exclusive right to use such brand within that county: Section 5525, L. O. L. In all proceedings where the title of stock was involved "the brand on an animal shall be *prima facie* evidence of ownership of the person whose brand it may be; provided, that such brand has been duly recorded as provided by law." Proof of the right of a person to use such brand was made by a certified copy of the record: Section 5528, L. O. L.

A new statute regulating brands and repealing Sections 5524, 5525 and 5528, L. O. L., was adopted when Chapter 33, Laws 1915, was enacted. By the provisions of this statute the state veterinarian is made state recorder of brands and all brands must be recorded with him and not elsewhere. Any person desiring to adopt a brand is required to make and file with the recorder of brands a certificate substantially like the one required under the previous statute and it then becomes the duty of the recorder of brands to record the certificate in a book kept for that purpose and to issue a certificate to such person who, from that time, has "the exclusive right to use such brand within the state." Section 3 reads thus:

"No evidence of ownership of stock by brands or for the purpose of identification shall be permitted in any court of this state unless the brand shall have been recorded as provided in this act."

The statute also provides that:

"All applications to have brands recorded shall be held by said state veterinarian for the period of sixty days after this act goes into effect before the same are recorded and that in the event two or more persons, firms, associations or corporations make application to have the same brand recorded, the one who has had said brand recorded in any county in this state for the greatest length of time shall be entitled to have said brand recorded with the state veterinarian. The evidence of the record in such county shall be furnished by a certificate of the county clerk; and provided further, that the state veterinarian shall not file or record any brand if the same has already been filed or recorded by him in favor of some other person, firm, association or corporation but shall return such fee and facsimile to the person, firm, association or corporation sending the same": Section 4.

85 Or.—12

The brand on an animal is declared to be *prima facie* evidence that the animal belongs to the owner of the brand; provided, the brand has been "duly recorded as provided by law"; and according to the terms of Section 8

"proof of the right of any person to use such brand shall be made by a copy of the record of the same, certified to by the state veterinarian in accordance with the provisions of this act, or the original certificate issued to him by the state veterinarian. Parol evidence shall be inadmissible to prove the ownership of a brand."

The only difference between the Mayfield and Grigsby brands is that in the Mayfield brand the lower end of the U is square, while in the Grigsby brand it is circular. This difference, however, is so slight that both brands are for all practical purposes the same, and the state recorder of brands would be warranted in refusing a certificate to use one after having issued a certificate to use the other. The defendant makes no claim arising out of this slight difference; and, moreover, the right to offer evidence of the Grigsby brand depends upon whether it is competent for the legislature to prohibit proof of ownership or identification by a brand which is not recorded by the act of 1915.

It is a fair inference to say that in any event the brand appearing on the hide found in the possession of Randolph was placed there before Chapter 33, Laws 1915, became effective, since all the evidence points to the conclusion that the hide came from a matured animal. If the brand was placed there by Mayfield it was done in the spring of 1913; and if Grigsby branded the animal he did it before Chapter 33 became operative. When Grigsby recorded the

HU brand in Klamath County on May 26, 1914, he acquired the sole and exclusive right to use that brand in that county; and he not only acquired the exclusive right to use that brand in Klamath County but by the terms of Section 5528, L. O. L., an animal found with that brand in Klamath County *prima facie* belonged to Grigsby. Moreover, during the entire period from May 26, 1914, until Chapter 33, Laws 1915, became effective, evidence concerning the May-field brand would have been inadmissible to prove that Mayfield owned any animal with the HU brand, although it would have been competent to offer evidence of the Mayfield brand for the purpose of proving identification as distinguished from ownership: *State* v. *Henderson*, 72 Or. 201, 203 (143 Pac. 627).

The act of 1915 was designed as a substitute for previous legislation regulating the use of brands. Under the old law one stock owner might record a brand in one county and another owner could record the same brand in another county; and this frequently resulted in litigation. Apparently the new law was devised for the purpose of producing uniformity and to prevent two different owners from using the same brand anywhere in the state. The new law gives an exclusive right to the whole state while the old law gave an exclusive right only in the county or counties where the certificate might be filed. Both the old and the new law make a recorded brand *prima facie* evidence that the owner of the brand owns the animal upon which the brand is found. Both laws prohibit proof of ownership of an animal by proof of the use of an unrecorded brand. The old law did not prohibit evidence of the use of an unrecorded brand to prove identity, but the new law does prohibit a party from

offering evidence of an unrecorded brand for the purpose of identifying an animal.

The act of 1915 recognized the fact that brands had been recorded in the different counties of the state and ample provision was made to enable the owner of a recorded brand to preserve his right by recording his brand with the state veterinarian. Inasmuch as Grigsby had recorded his brand under the old law, he could have preserved his right to the exclusive use of that brand by complying with the requirements of the new law; but he made no attempt to preserve his right, and consequently when the sixty day period fixed by Chapter 33 had expired, Mayfield was entitled to a certificate granting to him the exclusive right to use the HU brand throughout the state. Since Mayfied did and Grigsby did not comply with the new law the latter has lost and the former has acquired the exclusive right to use the HU brand not only in Klamath County but also throughout the entire state. Grigsby cannot do what he previously could do and Mayfield can do what he previously could not do in Klamath County.

It is conceded that the state can regulate the use of brands by providing that one brand can be used by only one stock owner. The state has power to provide for the method of acquiring and preserving the exclusive right to use a single brand.

When the legislature passed the act of 1915 and required brands to be filed anew, it was merely exercising the power to regulate brands and, when Grigsby failed to comply with the new regulation, he lost the right any longer to brand cattle with the HU brand on the right hip. The rules of evidence as declared by the legislature depended, under the old law, upon the existence of the right to use a recorded brand; and so, too, under the new law the rules of evidence are gov-

erned by the right to use a recorded brand.   Now as
before the right to use a recorded brand carries with
it the right to use the brand as evidence.   When
Grigsby had the right to use the brand he also enjoyed
the right to use it as evidence of ownership and, when
the right to use the brand was transferred to May-
field, the rules of evidence accompanied the right.
Although it may be doubtful, therefore, whether
strictly speaking the act of 1915 has changed the rules
of evidence in any particular, except as to proof of
identification, nevertheless for the purposes of this dis-
cussion the present statute may be regarded as hav-
ing changed the rules of evidence concerning brands.
When Grigsby had the right to the exclusive use of the
HU brand in Klamath County he could show that he
was, *prima facie,* the owner of an animal branded HU
by proving his right to use that brand.   That part of
the old statute which provided: (1) That ownership
of a branded animal could be proved by ownership of
the brand; and (2) that the branded animal *prima facie*
belonged to the owner of the brand, was merely a legis-
lative declaration of a rule of evidence; and so, too,
that part of the new statute which prohibits the use of
an unrecorded brand to prove either ownership or iden-
tification, as well as that part which makes a recorded
brand *prima facie* evidence of ownership, is only a
legislative declaration of a rule of evidence.   The state
has power to prescribe the rules of evidence which shall
be observed by its judicial tribunals: *Fong Yue Ting*
v. *United States,* 149 U. S. 729 (37 L. Ed. 905, 13 Sup.
Ct. 1016) ; *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235);
11 Am. & Eng. Ency. of Law, 550; 8 Cyc. 924; 1 Wig-
more on Evidence, § 7.   A consideration of the rules of
evidence found in Chapter 33, Laws 1915, involves the
legislative declaration: (1) That a recorded brand is

*prima facie* evidence that the owner of the brand owns an animal having the brand; and (2) that proof of ownership or identification cannot be made by a brand which is not recorded "as provided in this act."

The legislature can enact a statute making proof of one fact *prima facie* evidence of the main fact in issue, and the enactment of such a statute is but the declaration of a rule of evidence; and, hence, the statute making proof of a recorded brand *prima facie* evidence that an animal bearing that brand belongs to the owner of the brand is a valid declaration of a rule of evidence, because the statutory evidentiary fact is closely related to and naturally tends to prove the main fact, the ownership of the animal: *Mobile etc. R. Co.* v. *Turnipseed,* 219 U. S. 35 (31 Sup. Ct. 136, Ann. Cas. 1912A, 463, 464, 32 L. R. A. (N. S.) 226, 55 L. Ed. 78); 10 R. C. L. 864.

In the earlier history of the state the legislature merely provided for the recording of brands without declaring any rule of evidence upon the subject; and this court held that evidence of the recorded brand was evidence to be considered with other evidence of ownership, but the brand was not implied notice that the owner of the recorded brand owned the branded animal: *Stewart* v. *Hunter,* 16 Or. 62, 66 (16 Pac. 876, 8 Am. St. Rep. 267). See also *Hurst* v. *Territory,* 16 Okl. 600 (86 Pac. 280). Subsequently the legislature created a rule of evidence making a recorded brand *prima facie* evidence of ownership, and the right to declare a recorded brand *prima facie* evidence of ownership has been recognized in Oregon and in every other state where cattle are raised on the range: 3 C. J. 42; *Brown* v. *Moss,* 53 Or. 518, 522 (101 Pac. 207, 18 Ann. Cas. 541); *State* v. *Brinkley,* 55 Or. 134, 136 (104

Pac. 893, 105 Pac. 708); *State* v. *Garrett,* 71 Or. 298, 307 (141 Pac. 1123).

The legislature of this state, as in many other jurisdictions, also prohibited evidence of an unrecorded brand to prove ownership: *Johnson* v. *State,* 1 Tex. App. 333; *Dreyer* v. *State,* 11 Tex. App. 631; *Murray* v. *Trinidad Nat. Bk.,* 5 Colo. App. 359 (38 Pac. 615); *Territory* v. *Meredith,* 14 N. M. 288 (91 Pac. 731); *Territory* v. *Smith,* 12 N. M. 229 (78 Pac. 42); 3 C. J. 41; 25 Cyc. 108. No decision of this court has denied the authority of the legislature to prohibit the use of an unrecorded brand to prove ownership; but, on the contrary, every adjudication has recognized the validity of that part of the statute which since 1893 has prohibited proof of ownership by evidence of an unrecorded brand.

Since the statute only prohibited the use of an unrecorded brand to prove ownership and the prohibition did not also include proof of the identity of an animal it was held here, as in other jurisdictions where similar statutes were involved, that an unrecorded brand could be used as evidence to identify the animal: *State* v. *Hanna,* 35 Or. 195, 198 (57 Pac. 629); *State* v. *Morse,* 35 Or. 462, 467 (57 Pac. 631); *State* v. *Henderson,* 72 Or. 201, 203 (143 Pac. 627); *State* v. *Cardelli,* 19 Nev. 319 (10 Pac. 433); *Chesnut* v. *People,* 21 Colo. 512 (42 Pac. 656); *Brooke* v. *People,* 23 Colo. 375 (48 Pac. 502); *Chavez* v. *Territory,* 6 N. M. 455 (30 Pac. 903); 1 R. C. L. 1082; 1 Ency. of Ev. 889; 3 C. J. 42; 25 Cyc. 109. The reason for this ruling arises out of the fact that the finding of an animal bearing the brand used by a person involves: (1) The ownership of the animal; and (2) the identity of the animal. The distinction is clearly drawn in 1 Wigmore on Ev., Section 150, where the author says:

"When an animal is found in B's possession, and the
animal bears a brand or other mark, and one of the
issues is whether A is the owner of the animal, it is
a natural and immediate inference that the animal be-
longs to the person whose brand it bears, and, if that
brand is A's, then A. This inference, however, while
sufficiently probable in the light of practical experience,
is in truth a composite one, made up of two steps:
(1) first, the inference, from the presence of A's usual
mark, that A placed this particular mark,—a genuine
argument under the present principle, from a trace to
the source of the trace; and (2) secondly, the infer-
ence from the fact that A placed it there, to the fact
of his ownership of the animal. The latter step of in-
ference is the vital one; it is perhaps not less natural
than the former, but it is more serious in its effect. It
would seem that the latter step of inference has been
rarely conceded by courts, as a matter of common law;
though the former step was universally conceded, it
was said that the presence of A's brand was evidence
of identity (i. e. of the animal being one of those origi-
nally branded by A), but not of ownership."

2. The statute of 1915 goes further than the previous
legislation and prohibits the use of an unrecorded
brand to prove either the ownership or the identity of
a branded animal. The statute regulating brands does
not, however, attempt to make recorded brands the
only evidence by which ownership or identity can be
proved nor does it attempt to make a recorded brand
conclusive evidence of ownership. If the statute at-
tempted to make a recorded brand conclusive evidence
of ownership or identity; or if it pretended to make
recorded brands the exclusive method of proving
ownership or identity, then the legislation would be
assailable; but the existence of the brand law does not
prevent other methods of proof and, although Ran-
dolph could not offer evidence of the Grigsby brand,
he could offer any other evidence that he might have
tending to show that Mayfield did not own the animal.

Sections 3 and 8 of Chapter 33, Laws 1915, were evidently copied word for word from Sections 5 and 14 of a statute enacted in 1905 in Idaho: 1905 Session Laws of Idaho, 352. There was a brand law in Idaho prior to 1905 just as there was a brand law in Oregon prior to 1915; and, in a case analogous in all its essential features to the instant action, the ruling of the court there was adverse to every contention made by the defendant here concerning the validity and effect of the provisions of Chapter 33, Laws 1915: *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235). The present statute does not deprive Randolph of the right to prove that Mayfield did not own the animal, for, as said by the court in *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235),

"it is no more difficult now than it ever has been to prove ownership in an unbranded animal, and this statute puts the owner of an animal branded with an unrecorded brand in the same position with reference to proof of its ownership as if it had no brand on it at all."

No additional force is given to the contention of the defendant when it is argued that the act of 1915 changes prior rules of evidence. The state has the power to alter rules of evidence. Stated in general terms, the accepted rule is that a person does not have a vested right in a rule of evidence; and, therefore, the legislature has power to alter or create any rule of evidence so long as it leaves a party a fair opportunity to establish his case or defense, and give in evidence all the facts legitimately bearing on the issues in the cause: *Strode* v. *Washer,* 17 Or. 50, 59 (16 Pac. 926); *Boise Irr. etc. Co.* v. *Stewart,* 10 Idaho, 38, 58 (77 Pac. 25, 321); 10 R. C. L. 863; *Auburn* v. *Merchant,* 103 N. Y. 143 (8 N. E. 484, 57 Am. Rep. 705); *State* v.

*Beach,* 147 Ind. 74 (43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179) ; 6 R. C. L. 462.

The power of the legislature to alter rules of evidence is discussed in 1 Wigmore on Ev., Section 7, where the author says:

"There can be no vested right in a rule of evidence. Those rules are merely methods for ascertaining facts. It must be supposed that a change of the law merely makes it more likely that the fact will be truly ascertained,—either by admitting evidence whose former suppression, or by suppressing evidence whose former admission, helped to conceal the truth. In either case no fact has been taken away from the party; it is merely that good evidence has been given the one, or bad evidence been taken from the other. In any event, the ascertainment of the truth cannot be supposed to depend on a particular piece of evidence."

In 5 Wigmore on Ev. supplement index (2 ed.), page 4, the case of *State* v. *Dunn,* 13 Idaho, 9 (88 Pac. 235), is cited to strengthen Vol. 1, Section 7.

It is true that prior to 1915, Grigsby had a right to use the HU brand but it is also true that prior to the first legislation on the subject all persons had the right to use the brand. If the first statute was valid the second must be lawful, because there is no difference in principle. The first statute prohibited proof of ownership by an unrecorded brand and the last enactment prohibited the use of an unrecorded brand to prove either ownership or identity. If the first statute was valid then the second is likewise effective because in principle it is not different from the first legislation. A painstaking search has failed to discover a single precedent holding that the state cannot prohibit the use of an unrecorded brand to prove ownership; and if it be conceded that this character of legislation is unassailable, then it cannot be successfully contended

that the same legislative authority cannot prohibit proof of identity by an unrecorded brand. Whether viewed in the light of well-established general rules or measured by the standard fixed by precedents, the rules of evidence found in the act of 1915 are valid and enforceable. It was not error to receive a certified copy of the Mayfield certificate nor was it error to refuse to receive evidence relating to the Grigsby brand.

3. The state relied upon circumstantial evidence for the conviction of the defendant; and the most important item of circumstantial evidence submitted by the prosecution was the hide, together with the fact that it was in the possession of Randolph. The court charged the jury with reference to circumstantial evidence and while the defendant does not object to the instruction given, he does complain because of a refusal to give several lengthy requested instructions. Possibly it would have aided the jury if the concise instruction given by the court had been amplified; but, if the instruction given can be criticised for its brevity, those requested, besides some errors in them, have the fault of being lengthy and redundant and their very prolixity would have confused rather than instructed the jury.

The court refused a request to charge the jury concerning the possession of stolen property, although the defendant requested an instruction upon that subject. The requested instruction might be criticised because it used the words ''is a circumstance tending to prove guilt'' and yet neither party could complain if the court had employed the quoted language because it was invited by the defendant and did not prejudice the contention of the prosecution; and, therefore, the court should have given the requested instruction or one informing the jury of the rules concerning posses-

sion of stolen property. The refusal to instruct, concerning the possession of stolen property, was prejudicial error, especially since the state asked for a conviction on circumstantial evidence and the defendant had offered evidence which he claimed tended to explain the possession: 25 Cyc. 150, 151.

On the whole, the charge to the jury was a plain, concise and understandable statement of the rules governing the jury and, with the single exception mentioned, the instructions requested by the defendant were either given in substance or properly refused because not correctly stating the law. It is not necessary to notice any of the remaining assignments of error since the questions presented by them are not likely to recur upon a second trial. For the error mentioned the judgment is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.